No. 15-56951

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

Roberto Aviles,

*Plaintiff-Appellee,*

v.

Quik Pick Express, LLC,

*Defendant-Appellant.*

On Appeal from the
United States District Court for the Central District of California

Case No. 2:15-cv-05214-MWF-AGR

The Honorable Michael W. Fitzgerald

## APPELLANT'S OPENING BRIEF

JESSE A. CRIPPS
ANDREW G. PAPPAS
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone: 213.229.7000
Facsimile: 213.229.7520

*Attorneys for Defendant-Appellant Quik Pick Express, LLC*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, defendant-appellant

Quik Pick Express, LLC states that it has no parent corporation, and no publicly

held corporation owns 10% or more of its stock.


Dated: June 30, 2016                        /s/ Jesse A. Cripps
                                   _____
                                   Jesse A. Cripps
                                   GIBSON, DUNN & CRUTCHER LLP

                                   *Attorneys for Defendant-Appellant*
                                   *QUIK PICK EXPRESS, LLC*

# TABLE OF CONTENTS

<u>Page</u>

INTRODUCTION ...................................................................................1

STATEMENT OF JURISDICTION.......................................................3

STATEMENT OF THE ISSUES.............................................................4

STATEMENT OF FACTS ......................................................................4

SUMMARY OF ARGUMENT ...............................................................8

STANDARD OF REVIEW .....................................................................9

ARGUMENT .........................................................................................10

    I.     The Arbitration Provision's Severance Clause Expressly
          Requires Unenforceable Terms to Be Severed and the
          Remaining Terms Enforced. ..............................................10

    II.    The Arbitration Provision Clearly and Unmistakably Delegates
          Arbitrability Questions to the Arbitrator...........................18

CONCLUSION ......................................................................................24

STATEMENT OF RELATED CASES ..................................................25

CERTIFICATE OF COMPLIANCE......................................................26

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Appalachian Ins. Co. v. McDonnell Douglas Corp.*,
214 Cal. App. 3d 1 (1989) ................................................................11

*AT&T Mobility LLC v. Concepcion*,
563 U.S. 333 (2011)..........................................................10, 13, 22

*AT&T Techs., Inc. v. Commc'ns Workers of Am.*,
475 U.S. 643 (1986)...........................................................................19

*Awuah v. Coverall N. Am., Inc.*,
554 F.3d 7 (1st Cir. 2009)................................................................20

*Baeza v. Superior Court*,
201 Cal. App. 4th 1214 (2011) ......................................................12

*Baine v. Cont'l Assurance Co.*,
21 Cal. 2d 1 (1942) ...........................................................................11

*Bank of the West v. Superior Court*,
2 Cal. 4th 1254 (1992) .....................................................................10

*Bencharsky v. Cottman Transmission Sys., LLC*,
625 F. Supp. 2d 872 (N.D. Cal. 2008)...........................................12

*Brennan v. Opus Bank*,
796 F.3d 1125 (9th Cir. 2015) ...............................18, 19, 20, 22, 23

*Buckeye Check Cashing, Inc. v. Cardegna*,
546 U.S. 440 (2006)....................................................................13, 22

*Chalk v. T-Mobile USA, Inc.*,
560 F.3d 1087 (9th Cir. 2009) ...................................................14, 15

*Contec Corp. v. Remote Solution Co.*,
398 F.3d 205 (2d Cir. 2005) ...........................................................20

*Cox v. Ocean View Hotel Corp.*,
533 F.3d 1114 (9th Cir. 2008) ...........................................................9

## TABLE OF AUTHORITIES
### (con't)

Page(s)

*Dotson v. Amgen, Inc.*,
   181 Cal. App. 4th 975 (2010) ............................................................12

*Fallo v. High-Tech Inst.*,
   559 F.3d 874 (8th Cir. 2009) ............................................................20

*Iskanian v. CLS Transportation L.A., LLC*,
   59 Cal. 4th 348 (2014) ...............................................................8, 17

*Little v. Auto Stiegler, Inc.*,
   29 Cal. 4th 1064 (2003) ....................................................................12

*Meadows v. Dickey's Barbecue Restaurants Inc.*,
   No. 15-cv-02139-JST, --- F. Supp. 3d ----, 2015 WL 7015396
   (N.D. Cal. Nov. 12, 2015).................................................................22

*Mediterranean Enters., Inc. v. Ssangyong Corp.*,
   708 F.2d 1458 (9th Cir. 1983) ...........................................................9

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
   473 U.S. 614 (1985).....................................................................2, 13

*Montano v. The Wet Seal Retail, Inc.*,
   232 Cal. App. 4th 1214, 182 Cal. Rptr. 3d 220 (2015) ....................15

*Moses H. Cone Meml. Hosp. v. Mercury Constr. Corp.*,
   460 U.S. 1 (1983)........................................................................2, 13

*Oracle America, Inc. v. Myriad Group A.G.*,
   724 F.3d 1069 (9th Cir. 2013) ...............................................19, 20, 22

*Petrofac, Inc. v. DynMcDermott Petroleum Operations Co.*,
   687 F.3d 671 (5th Cir. 2012) ............................................................20

*Pokorny v. Quixtar, Inc.*,
   601 F.3d 987 (9th Cir. 2010) .............................................................9

*Prima Paint Corp. v. Flood & Conklin Mfg. Co.*,
   388 U.S. 395 (1967)..........................................................................13

*Qualcomm Inc. v. Nokia Corp.*,
   466 F.3d 1366 (Fed. Cir. 2006) ........................................................20

# TABLE OF AUTHORITIES
## (con't)

Page(s)

*Rent-A-Center, W., Inc. v. Jackson*,
   561 U.S. 63 (2010) .............................................................................. 18

*Republic of Argentina v. BG Grp. PLC*,
   665 F.3d 1363 (D.C. Cir. 2012) ......................................................... 20

*Roman v. Superior Court*,
   172 Cal. App. 4th 1462 (2009) .......................................... 2, 4, 10, 12

*Sakkab v. Luxottica Retail North America, Inc.*,
   803 F.3d 425 (9th Cir. 2015) .................................................. 1, 8, 17

*Securitas Sec. Servs. USA, Inc. v. Superior Court*,
   234 Cal App. 4th 1109 (2015) ........................................................... 15

*Shaw v. Regents of Univ. of Cal.*,
   58 Cal. App. 4th 44 (1997) ........................................................ 10, 22

*Shierkatz Rllp v. Square, Inc.*,
   No. 15-CV-02202-JST, 2015 WL 9258082 (N.D. Cal. Dec. 17,
   2015) .................................................................................................. 21

*Shroyer v. New Cingular Wireless Services, Inc.*,
   498 F.3d 976 (9th Cir. 2007) ............................................................. 14

*Sierra v. Oakley Sales Corp.*,
   637 F. App'x 368 (9th Cir. 2016) ...................................................... 17

*Terminix Int'l Co. v. Palmer Ranch LP*,
   432 F.3d 1327 (11th Cir. 2005) ......................................................... 20

*Williams Constr. Co. v. Standard Pac. Corp.*,
   254 Cal. App. 2d 442 (1967) ............................................................. 22

*Wolschlager v. Fidelity Nat'l Title Ins. Co.*,
   111 Cal. App. 4th 784 (2003) ............................................................ 22

*Zelkind v. Flywheel Networks, Inc.*,
   No. 15-cv-03375-WHO, 2015 WL 9994623 (N.D. Cal. Oct. 16,
   2015) .................................................................................................. 20

## TABLE OF AUTHORITIES
### (con't)

Page(s)

*Zenelaj v. Handybook Inc.*,
  82 F. Supp. 3d 968 (N.D. Cal. 2015) ................................................................20

**Statutes**

9 U.S.C. § 4 ................................................................................................................3

9 U.S.C. § 16(a)(1)(B) ...............................................................................................3

28 U.S.C. § 1332(d)(2) ...............................................................................................3

Cal. Civ. Code § 1599 ..............................................................................................11

Cal. Civ. Code § 1638 ..............................................................................................10

Cal. Civ. Code § 1641 ..............................................................................................10

Cal. Civ. Code § 1643 ..............................................................................................11

Cal. Civ. Code § 1652 ..............................................................................................11

Cal. Civ. Code § 1670.5(a) ......................................................................................12

Cal. Civ. Code § 3541 ..............................................................................................11

Cal. Code Civ. Proc. § 1858 ....................................................................................11

**Rules**

Fed. R. App. P. 4(a)(1)(A) .........................................................................................4

## INTRODUCTION

The District Court's decision denying defendant-appellant Quik Pick Express, LLC's motion to compel arbitration contravenes the plain language of the parties' arbitration agreement, violates public policy, and conflicts with the decisions of this Court and other federal courts of appeals.

Plaintiff-appellee Roberto Aviles purports to represent a putative class of truck drivers who entered into subhaul agreements with Quik Pick, alleging Quik Pick misclassified him and the putative class members as independent contractors. The parties' agreement contains an arbitration provision pursuant to which the parties agreed to arbitrate all disputes, waive class and representative actions, sever any unenforceable terms, and delegate arbitrability questions to the arbitrator.

The District Court concluded Aviles and the putative class members are independent contractors and not employees, and correctly held the class members are not exempt from arbitration under the Federal Arbitration Act. Nevertheless, the court refused to enforce the parties' agreement after concluding that (1) the court and not the arbitrator should decide arbitrability questions, (2) the arbitration provision's waiver of representative actions was substantively unconscionable *per se* in light of this Court's decision in in *Sakkab v. Luxottica Retail North America, Inc.*, 803 F.3d 425 (9th Cir. 2015), and (3) the representative-action waiver was

1

explicitly non-severable from, and therefore required the invalidation of, the rest of the arbitration provision. This was error.

*First*, Quik Pick continues to respectfully dispute that the arbitration provision is even minimally procedurally unconscionable, and that the representative-action waiver renders the arbitration provision substantively unconscionable. But even assuming it does, the arbitration provision expressly requires that any "unenforceable" terms "be severed and the remaining terms enforced" (ER31), California's strong public policy is to sever offending terms from a contract and enforce the rest (*Roman v. Superior Court*, 172 Cal. App. 4th 1462, 1477 (2009)), and "as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration" (*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985) (quoting *Moses H. Cone Meml. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983))). Thus, even if the representative-action waiver were unenforceable as to the claims Aviles purports to bring under California's Private Attorney General Act of 2004 ("PAGA"), the arbitration provision should at a minimum be enforced as to the various non-PAGA causes of action raised in Aviles's complaint.

*Second*, and in any event, the District Court never should have reached the question whether the arbitration was severable or even enforceable, because the arbitration provision clearly and unmistakably delegates arbitrability questions to

the arbitrator. The arbitration provision's delegation clause requires that "any controversy … shall be submitted to JAMS for final and binding arbitration in accordance with its comprehensive rules and procedures" (ER30), and JAMS's rules undisputedly commit arbitrability questions to the arbitrator. The District Court refused to enforce the delegation clause, however, because it concluded Aviles is unsophisticated and, as a result, likely did not understand the delegation clause's import. That conclusion is unsupported by this Court's decisions, breaks with the prevailing weight of authority among California district courts, and conflicts with the decisions of most other federal courts of appeals.

This Court should reverse with directions (1) to sever the representative-action waiver and enforce the balance of the arbitration agreement, or, alternatively, (2) to dismiss the action as a whole pending the arbitrator's arbitrability determination.

## STATEMENT OF JURISDICTION

The District Court had jurisdiction over this case pursuant to 28 U.S.C. § 1332(d)(2). This Court has jurisdiction over Quik Pick's appeal pursuant to 9 U.S.C. § 16(a)(1)(B), which provides for an immediate interlocutory appeal from an order denying a petition to compel arbitration under 9 U.S.C. § 4.

The District Court's order denying Quik Pick's motion to compel arbitration was entered on December 3, 2015. (ER1.) Quik Pick timely filed its notice of appeal on December 21, 2015. (ER17; Fed. R. App. P. 4(a)(1)(A).)

## STATEMENT OF THE ISSUES

1. Did the District Court's order denying Quik Pick's petition to compel arbitration conflict with the "strong legislative and judicial preference … to sever [an] offending term and enforce the balance of [an arbitration] agreement" (*Roman*, 172 Cal. App. 4th at 1477), by holding that Aviles's PAGA claims cannot be tried separately from his non-PAGA claims and are not severable from the arbitration provision?

2. Did the District Court's order deciding whether the parties' dispute was arbitrable contravene the contract's delegation provision, which clearly and unmistakably commits questions of arbitrability to the arbitrator in the first instance by incorporating JAMS's rules?

## STATEMENT OF FACTS

1. Aviles sued Quik Pick in California state court in June 2015, asserting various violations of the California Labor Code. (ER116.) Aviles purports to represent a "putative class of truck drivers who signed subhaul agreements with [Quik Pick] to carry cargo from the Los Angeles and Long Beach harbors to other

4

destinations within California." (ER2 (citing Dkt. 1-6 ¶¶ 4–7 [ER117–18]).)
Aviles claims that Quik Pick misclassified him and the putative class members "as
'independent contractors' rather than employees, and consequently, *inter alia*,
failed to pay wages, maintain time records, and reimburse expenses." (*Id.* (citing
Dkt. 1-6 ¶¶ 25–98 [ER122–35].)

Quik Pick timely removed the case to the U.S. District Court for the Central
District of California under the Class Action Fairness Act. (*Id.*) Quik Pick
subsequently moved to stay the case and compel arbitration pursuant to the
arbitration provision in the parties' subhaul agreement. (*Id.*)

2. Three provisions of that arbitration provision are pertinent here. First, in
its delegation clause, that arbitration provision provides that, with specific limited
exceptions, "any controversy arising out of or related to this Agreement … , or
related to the transportation of cargo and merchandise (including without limitation
an allegation that this Agreement is void from the outset that Contractor's
relationship to Company is something other than that of independent contractor),
shall be submitted to JAMS for final and binding arbitration in accordance with its
comprehensive rules and procedures that are in effect at the time the arbitration is
filed." (ER30.)

Second, the arbitration provision contains a "Class, Collective,
Representative, Consolidated, and Multiple Claimant Action Waiver" pursuant to

which the parties "agreed that any and all arbitration proceedings will be initiated and maintained *only* as matters involving a single claimant or plaintiff and further agree that no class, collective, representative or other multiple claimant or plaintiff actions will be permitted." (ER30–31 (emphasis in original).) Accordingly, "[t]he parties voluntarily and fully waive[d] and [gave] up any and all rights to bring any class, collective, consolidated, multiple claimant or plaintiff or representative action against each other or others covered by this Section." (ER31.)

Third, the arbitration provision contains a severance clause. That paragraph provides, in full: "If any provision in this Section is found to be unenforceable, that term shall be severed and the remaining terms enforced. Under no circumstances, however, shall any class, collective, representative, consolidated, and multiple claimant action be permitted to proceed in any arbitration proceedings[.]" (*Id.*)

3. Aviles moved unsuccessfully to remand the case to state court. (ER2–3.) Then, in October 2015, he "filed an untimely First Amended Complaint" that "substantially expanded [his] Private Attorney General Act ('PAGA') claim so as to have the PAGA claim lead and dominate the FAC." (ER3.)

4. On December 3, 2015, the District Court entered an order denying Quik Pick's Motion to Stay and Compel Arbitration. (ER1.) Based on the facts before it, the court "conclude[d] that there is little doubt that [Aviles] and the putative

6

class members do *not* share an employer-employee relationship with [Quik Pick],"
and therefore held the subhaul agreement was *not* "exempt under Section 1 of the
[Federal Arbitration Act]." (ER9.)

The District Court also concluded, however, that it could not "give effect to
[the arbitration provision's] delegation clause," under which "any controversy …
shall be submitted to JAMS for finding and binding arbitration in accordance with
its comprehensive rules and procedures[.]" (ER12; ER30.) The court
acknowledged that "the district courts in the Ninth Circuit have split on whether
incorporation [of JAMS' rules] itself serves as clear and unmistakable evidence of
the parties' intent to delegate arbitrability to the arbitrator, regardless of the parties'
level of sophistication." (ER11.) The court concluded it did not evince such a
"'clear and unmistakable' intent to delegate" here. (*Id.*)

Adopting the minority position among district courts, the court reasoned that
"[a]lthough [Aviles] is an independent contractor who operates his own trucking
business, he is … nevertheless [an] 'inexperienced individual[], untrained in the
law." (ER12.) As a result, "[a]lthough the arbitration provision and the delegation
clause are in bold in the subhaul agreement," the court concluded "it is doubtful
that [Aviles] actually understood the import of its terms." (*Id.*)

The District Court therefore reached the question whether the arbitration
provision was unconscionable. (*Id.*) The court concluded the arbitration provision

was "minimal[ly]" procedural unconscionable, and rejected Aviles's argument that its fee-splitting arrangement rendered it substantively unconscionable.  (ER14–15.)  Nonetheless, applying the California Supreme Court's rule in *Iskanian v. CLS Transportation L.A., LLC*, 59 Cal. 4th 348 (2014), and this Court's decision in *Sakkab*, 803 F.3d 425, the District Court concluded that the arbitration provision's PAGA waiver "is contrary to public policy and thus unconscionable."  (ER14–15.)  This "per se substantive unconscionability," the court concluded, rendered "the arbitration provision … unconscionable."  (ER15.)

Notwithstanding the arbitration provision's severance clause, the District Court also concluded "that the unconscionable PAGA waiver within the arbitration provision cannot be severed according to the express terms of the subhaul agreement."  (ER16.)  The court therefore "[struck] the entire arbitration provision from the subhaul agreement," and denied Quik Pick's motion.  (*Id.*)

Quik Pick timely appealed on December 21, 2015.  (ER17.)

## SUMMARY OF ARGUMENT

The District Court's decision holding that the PAGA waiver cannot be severed from the arbitration provision contravenes that provision's express terms:  The arbitration provision's severance clause provides, in the plainest possible language, that "[i]f any provision in this Section is found to be unenforceable, *that term shall be severed and the remaining terms enforced.*"  (ER31 (emphasis

8

added).)  Consistent with the parties' agreement, the District Court should have severed the PAGA waiver and enforced the remainder of the arbitration provision.

The District Court also erred by refusing to give effect to the arbitration provision's delegation clause.  This Court's decisions make clear, and the weight of authority from district courts and other circuits holds, that by incorporating JAMS' comprehensive rules and procedures, the parties clearly and unmistakably delegated questions of arbitrability to the arbitrator—regardless of their level of sophistication.

## STANDARD OF REVIEW

Although a court's decision whether to "sever an unconscionable provision from an agreement" is generally reviewed for an abuse of discretion under California law (*Pokorny v. Quixtar, Inc.*, 601 F.3d 987, 1005 (9th Cir. 2010)), "[a] determination of the arbitrability of a dispute, like the interpretation of any contractual provision, is subject to *de novo* review."  *Mediterranean Enters., Inc. v. Ssangyong Corp.*, 708 F.2d 1458, 1462–63 (9th Cir. 1983); *accord Cox v. Ocean View Hotel Corp.*, 533 F.3d 1114, 1119 (9th Cir. 2008) ("We review the denial of a motion to compel arbitration de novo.").

**ARGUMENT**

## I. The Arbitration Provision's Severance Clause Expressly Requires Unenforceable Terms to Be Severed and the Remaining Terms Enforced.

The plain and unambiguous language of the arbitration provision's severance clause requires that any unenforceable terms in that provision be severed and the rest of the arbitration provision enforced. (ER31.) The District Court's contrary conclusion conflicts with the provision's clear terms and contravenes the "strong legislative and judicial preference … to sever [an] offending term and enforce the balance of [an arbitration] agreement." *Roman*, 172 Cal. App. 4th at 1477.

2. The FAA reflects a "liberal federal policy favoring arbitration, and the fundamental principle that arbitration is a matter of contract." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011). And under California law, "[i]f contractual language is clear and explicit, it governs." *Bank of the West v. Superior Court*, 2 Cal. 4th 1254, 1264 (1992) (citing Cal. Civ. Code § 1638); *see also Shaw v. Regents of Univ. of Cal.*, 58 Cal. App. 4th 44, 53 (1997) ("Where contract language is clear and explicit and does not lead to absurd results, we ascertain intent from the written terms and go no further.").

"The whole of a contract is to be taken together, so as to give effect to every part, … each clause helping to interpret the other" (Cal. Civ. Code § 1641), and in

10

construing an "instrument . . . where there are several provisions or particulars, such a construction is, if possible, to be adopted as will give effect to all" (Cal. Code Civ. Proc. § 1858). Moreover, "[w]here a contract has several distinct objects, of which one at least is lawful, and one at least is unlawful, in whole or in part, the contract is void as to the latter and valid as to the rest." Cal. Civ. Code § 1599. Any "[r]epugnancy in a contract must be reconciled, if possible, by such an interpretation as will give some effect to the repugnant clauses, subordinate to the general intent and purpose of the whole contract." Cal. Civ. Code § 1652.

Courts therefore must "not use a 'disjointed, single-paragraph, strict construction approach," and "[a]n interpretation which renders part of the instrument to be surplusage should be avoided." *Appalachian Ins. Co. v. McDonnell Douglas Corp.*, 214 Cal. App. 3d 1, 12 (1989); *see* Cal. Civ. Code § 3541 ("An interpretation which gives effect is preferred to one which makes void.").

Rather, "[a] contract must receive such an interpretation as will make it lawful, operative, definite, reasonable, and capable of being carried into effect, if it can be done without violating the intention of the parties" (Cal. Civ. Code § 1643), and must not receive an interpretation that "would lead to absurd and obviously unintended results." *Baine v. Cont'l Assurance Co.*, 21 Cal. 2d 1, 5 (1942).

California's statutory rules of construction further provide that "[i]f the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result." Cal. Civ. Code § 1670.5(a).

"Significantly," however, "the strong legislative and judicial preference is to *sever* the offending term and enforce the balance of the agreement." *Roman*, 172 Cal. App. 4th at 1477 (emphasis added). Thus, "[w]here … only one provision of the agreement is found to be unconscionable and that provision can easily be severed without affecting the remainder of the agreement, the proper course is to do so." *Dotson v. Amgen, Inc.*, 181 Cal. App. 4th 975, 985 (2010); *see also Little v. Auto Stiegler, Inc.*, 29 Cal. 4th 1064, 1074–76 (2003) (severing unconscionable provision from arbitration agreement and enforcing remainder of agreement); *Bencharsky v. Cottman Transmission Sys., LLC*, 625 F. Supp. 2d 872, 881–83 (N.D. Cal. 2008) (severing unenforceable provisions from arbitration agreement, including provision that barred relief available under "unwaivable statute"); *Baeza v. Superior Court*, 201 Cal. App. 4th 1214, 1230 (2011) ("California cases take a very liberal view of severability, enforcing valid parts of an apparently indivisible

12

contract where the interests of justice or the policy of the law would be furthered.") (citation omitted).

Moreover, "'as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.'" *Mitsubishi Motors Corp.*, 473 U.S. at 626 (quoting *Moses H. Cone Meml. Hosp.*, 460 U.S. at 24–25); *see Concepcion*, 563 U.S. at 345 ("the FAA was designed to promote arbitration").[1]

1. Here, the District Court, applying *Iskanian* and *Sakkab*, concluded the arbitration provision's PAGA waiver was substantively unconscionable *per se*, and then held "that the unconscionable PAGA waiver within the arbitration provision cannot be severed according to the express terms of the subhaul agreement." (ER15–16.) "The plain language of the contract requires invalidation of the entire arbitration provision," the court reasoned, "because the PAGA waiver expressly forbids severance." (ER16.) As a result, the court "[struck] the entire arbitration provision from the subhaul agreement," purportedly "consistent with the plain language of the contract." (*Id.*) The District Court got it exactly wrong.

---

[1] The Supreme Court's decisions construing arbitration agreements also suggest a federal policy in favor of severability. *See Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445 (2006) ("[A]s a matter of substantive federal law, an arbitration provision is severable from the remainder of the contract."); *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 402–06 (1967))

3. Even assuming arguendo that the PAGA waiver was unenforceable,[2] nothing in the PAGA waiver itself "expressly forbids severance." (*Id.*) Pursuant to that waiver the parties "agreed that any and all arbitration proceedings will be initiated and maintained *only* as matters involving a single claimant or plaintiff," and "that no … representative … actions will be permitted"; and "[t]he parties voluntarily and fully waive[d] and [gave] up any and all rights to bring any … representative action[s] against each other or others." (ER30–31.) But the PAGA waiver says nothing (expressly or impliedly) about severance.

This is not a case like *Shroyer v. New Cingular Wireless Services, Inc.*, 498 F.3d 976 (9th Cir. 2007), a pre-*Concepcion* case in which this Court held that the parties' class arbitration waiver was unenforceable, and then enforced a "nonseverability clause" that provided: "'if this specific [class arbitration waiver] proviso is found to be unenforceable, *then the entirety of this arbitration clause shall be null and void*.'" *Id.* at 980, 986–87 (emphasis added).

Nor is this a case like *Chalk v. T-Mobile USA, Inc.*, 560 F.3d 1087 (9th Cir. 2009), cited by the District Court, in which the parties' arbitration agreement provided: "IF A COURT OR ARBITRATOR DETERMINES THAT YOUR WAIVER OF YOUR ABILITY TO PURSUE CLASS OR REPRESENTATIVE

---

[2] Quik Pick continues to dispute that the PAGA waiver was unconscionable or unenforceable.

CLAIMS IS UNENFORCEABLE, *THE ARBITRATION AGREEMENT WILL NOT APPLY* AND OUR DISPUTE WILL BE RESOLVED BY A COURT OF APPROPRIATE JURISDICTION." *Id.* at 1091 (emphasis added). The Court there concluded the class arbitration waiver was unconscionable, and then enforced the "provision prohibiting severance of the class action waiver." *Id.* at 1098; *see also Securitas Sec. Servs. USA, Inc. v. Superior Court*, 234 Cal App. 4th 1109, 1114 (2015) (class waiver non-severable where the waiver "*shall not be severable* from this Agreement in any case in which the dispute to be arbitrated is brought as a class, collective, or representative action") (emphasis added); *Montano v. The Wet Seal Retail, Inc.*, 232 Cal. App. 4th 1214, 182 Cal. Rptr. 3d 220, 223 (2015) (PAGA waiver non-severable where the parties' agreement provided, "[i]f either party initiates or joins in a lawsuit or arbitration against the other party in violation of this waiver *and* the waiver is found to be unenforceable for any reason by a court or arbitrator, *then this entire arbitration agreement is void and unenforceable by the parties*") (second emphasis added).

Unlike in those cases, there is nothing in the PAGA waiver to even suggest that it cannot be severed from the rest of the class waiver, much less from the arbitration provision as a whole. In fact, contrary to the District Court's conclusion (ER16), the PAGA waiver says nothing whatsoever about severance.

4.  The arbitration provision's severance clause, however, not only permits the severance of the PAGA waiver—it clearly and unambiguously requires it.

The severance clause provides, in full:  "If any provision in this Section is found to be unenforceable, that term *shall be severed* and the remaining terms enforced.   Under no circumstances, however, shall any class, collective, representative, consolidated, and multiple claimant action be permitted to proceed in any arbitration proceeding."  (ER31 (emphasis added).)

And the meaning of that clause is clear:   If the PAGA waiver is "unenforceable," as the District Court "found," then it "shall be severed and the remaining terms [of the arbitration provision] enforced."  (*Id.*)  That is, even if the PAGA waiver is unenforceable as to the claims Aviles denominates as PAGA causes of action in his first amended complaint (ER41–49 ¶¶ 23–56, ER51 ¶¶ 65–68), (1) the arbitration provision should at a minimum be enforced as to the various *non*-PAGA causes of action raised in Aviles's complaint, including but not limited to his Unfair Competition Law claim, class action allegations, alter ego liability claim, and class action civil conspiracy claim (ER49 ¶¶ 57–64, ER52–57 ¶¶ 69–93), (2) those claims should proceed in bilateral arbitration consistent with the terms of the parties' arbitration agreement, and (3) Aviles's PAGA claims should be adjudicated in court.

16

In *Sierra v. Oakley Sales Corp.*, 637 F. App'x 368 (9th Cir. 2016), for example, this Court concluded an "offending clause waiving representative claims [was] severable from the rest of [an arbitration] agreement" where the agreement provided:

> If any provision … of the Dispute Resolution Agreement is held illegal, invalid or unenforceable in any respect Oakley and the Employee agree that such provision … shall be deemed to be modified only as necessary to permit its enforcement to the maximum extent permitted by applicable law (except that Oakley does not agree under any circumstances to a modification of the Dispute Resolution Agreement to permit a class or collective action to be adjudicated in the arbitration forum in any case brought as a class or collective action.)  In this event, the remainder of the Dispute Resolution Agreement shall not be affected thereby.

*Id.* at 369.  The *Sierra* agreement—like the severance clause here—thus provided (1) that any unenforceable provisions must be severed, but (2) a representative claim would not proceed in arbitration.  *Id.*[3]  The Court remanded the case to the District Court "to decide where Sierra's representative PAGA claims should be resolved"—in court or in arbitration.  *Id.* (citing *Sakkab*, 803 F.3d at 440); *see also Iskanian*, 59 Cal. 4th at 391–92 (where an arbitration agreement involved (1) a provision stating that all claims would be arbitrated, (2) a representative action

---

[3] In a footnote, the Court in *Sierra* "note[d] that the arbitration agreement states that 'Oakley expressly does not agree to arbitrate any claim on a class or collective basis.'  Nonetheless, it is not forbidden from doing so."  *Sierra*, 637 F. App'x at 369 n.1.  It is unclear what relevance, if any, this had to the Court's disposition of the question whether the PAGA waiver was severable.

17

waiver, and (3) a statement that representative claims could not be pursued in arbitration, remanding for further consideration of where and how individual and representative claims would be resolved).

Here, the Court should reverse the District Court's decision with directions to sever the PAGA waiver and enforce the remainder of the parties' arbitration agreement—consistent with that agreement's plain terms. (ER30–31.)

## II. The Arbitration Provision Clearly and Unmistakably Delegates Arbitrability Questions to the Arbitrator.

In any event, the District Court never should have reached the question whether the PAGA waiver was enforceable, because the arbitration provision clearly and unmistakably delegates questions of arbitrability to the arbitrator.

1. The United States Supreme Court has "recognized that parties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 68–69 (2010). "An agreement to arbitrate a gateway issue is simply an additional, antecedent agreement to the party seeking arbitration asks the federal court to enforce, and the FAA operates on this additional arbitration agreement just as it does any other." *Id.* at 70. And "'gateway issues can be expressly delegated to the arbitrator where 'the parties clearly and unmistakably provide'" for it. *Brennan v. Opus Bank*, 796 F.3d 1125

18

(9th Cir. 2015) (quoting *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986)).

Last year in *Brennan*, this Court held that a contract's "incorporation of the [American Arbitration Association's] rules"—which assign arbitrability questions to the arbitrator—"constitutes clear and unmistakable evidence that contracting parties agreed to arbitrate arbitrability." *Id.* at 1130. Although the Court limited its holding "to the facts of the … case, which … involve[d] an arbitration agreement 'between sophisticated parties,'" the Court emphasized that its holding "should not be interpreted to *require* that the contracting parties be sophisticated or that the contract be 'commercial' before a court may conclude that incorporation of the AAA rules constitutes 'clear and unmistakable' evidence of the parties' intent." *Id.* at 1130–31 (emphasis added). The Court thus underscored that its "holding does not foreclose the possibility that this rule could also apply to unsophisticated parties[.]" *Id.* at 1130.

The Court's decision in *Brennan* followed its holding in *Oracle America, Inc. v. Myriad Group A.G.*, 724 F.3d 1069 (9th Cir. 2013), "that incorporation of the UNCITRAL rules—which contain a jurisdictional provision 'almost identical' to the one in the AAA rules—constituted 'clear and unmistakable evidence that the parties agreed the arbitrator would decide arbitrability.'" *Brennan*, 796 F.3d at 1130 (quoting *Oracle Am.*, 724 F.3d at 1074–75)). In *Oracle America*, the Court

"observed that '[v]irtually every circuit to have considered the issue has determined that incorporation of the [AAA] arbitration rules constitutes clear and unmistakable evidence that the parties agreed to arbitrate arbitrability.'" *Id.* (quoting *Oracle Am.*, 724 F.3d at 1074). And as the Court noted in *Brennan*, "the vast majority of the circuits that hold that incorporation of the AAA rules constitutes clear and unmistakable evidence of the parties' intent do so without explicitly limiting that holding to sophisticated parties or to commercial contracts." *Id.* at 1130–31 (citing *Petrofac, Inc. v. DynMcDermott Petroleum Operations Co.*, 687 F.3d 671, 675 (5th Cir. 2012); *Republic of Argentina v. BG Grp. PLC*, 665 F.3d 1363, 1371 (D.C. Cir. 2012); *Fallo v. High-Tech Inst.*, 559 F.3d 874, 878 (8th Cir. 2009); *Qualcomm Inc. v. Nokia Corp.*, 466 F.3d 1366, 1373 (Fed. Cir. 2006); *Terminix Int'l Co. v. Palmer Ranch LP*, 432 F.3d 1327, 1332 (11th Cir. 2005); *Contec Corp. v. Remote Solution Co.*, 398 F.3d 205, 208 (2d Cir. 2005); *Awuah v. Coverall N. Am., Inc.*, 554 F.3d 7, 10–12 (1st Cir. 2009)).

"[T]he great weight of prevailing case law" among California district courts likewise holds that "unsophisticated parties can clearly and unmistakably delegate arbitrability" in arbitration agreements. *Zenelaj v. Handybook Inc.*, 82 F. Supp. 3d 968, 973 (N.D. Cal. 2015) (collecting cases); *see also Zelkind v. Flywheel Networks, Inc.*, No. 15-cv-03375-WHO, 2015 WL 9994623, at *3 (N.D. Cal. Oct. 16, 2015).

2. The parties clearly and unmistakably delegated arbitrability questions to the arbitrator here. The delegation clause in the arbitration provision provides:

> [A]ny controversy arising out of or related to this Agreement … or related to the transportation of cargo and merchandise (including without limitation an allegation that this Agreement is void from the outset or that the Contractor's relationship to [the] Company is something other than that of independent contractor), shall be submitted to JAMS for final and binding arbitration in accordance with its comprehensive rules and procedures that are in effect at the time the arbitration is filed.

(ER30.)

JAMS's Comprehensive Arbitration Rules and Procedures, in turn, provide:

> Jurisdictional and arbitrability disputes, including disputes over the formation, existence, validity, interpretation or scope of the agreement under which Arbitration is sought, and who are proper Parties to the Arbitration, shall be submitted to and ruled on by the Arbitrator. The Arbitrator has the authority to determine jurisdiction and arbitrability issues as a preliminary matter.

(ER109; *see also* ER4 (granting Quik Pick's motion to take judicial notice of JAMS's rules).)

Like the AAA rules the Court considered in *Brennan* and the UNCITRAL rules at issue in *Oracle America* then, the JAMS rules clearly commit arbitrability questions to the arbitrator. *See, e.g.*, *Shierkatz Rllp v. Square, Inc.*, No. 15-CV-02202-JST, 2015 WL 9258082, at *6 (N.D. Cal. Dec. 17, 2015) (refusing to distinguish between AAA and JAMS rules' provision that the arbitrator shall decide issues of arbitrability). And here, much like in *Brennan* and *Oracle*

*America*, the parties' incorporation of the JAMS rules into the arbitration provision is clear and unmistakable evidence that the parties intended to delegate arbitrability issues to the arbitrator. *Brennan*, 796 F.3d at 1130; *Oracle Am.*, 724 F.3d at 1075.[4]

Even the District Court acknowledged "that, under some circumstances, incorporating the JAMS rules into an agreement can evince a 'clear and unmistakable' intent to delegate." (ER11.) But the court nonetheless refused to enforce the delegation clause, concluding "it is doubtful that [Aviles] actually understood the import of its terms" because he is an "'inexperienced individual[], untrained in the law,'" he "executed the [contract] at [Quik Pick's] office without the benefit of counsel, and the parties dispute Plaintiff's English language competency." ER12 (quoting *Meadows v. Dickey's Barbecue Restaurants Inc.*,

---

[4] Moreover, it is well established in California that the parties to a contract "'may incorporate by reference into their contract the terms of some other document.'" *Shaw*, 58 Cal. App. 4th at 54 (quoting *Williams Constr. Co. v. Standard Pac. Corp.*, 254 Cal. App. 2d 442, 454 (1967)). That is true whether or not the parties are sophisticated. *See, e.g., Wolschlager v. Fidelity Nat'l Title Ins. Co.*, 111 Cal. App. 4th 784, 790–91 (2003) (holding that an individual home purchaser and a title insurance company incorporated an arbitration agreement into their contract by incorporating an extrinsic document that contained such an agreement). A contrary rule for arbitration agreements would be preempted by the FAA, which "places arbitration agreements on equal footing with all other contracts" (*Buckeye Check Cashing, Inc.*, 546 U.S. at 443), and forbids rules that "have a disproportionate impact on arbitration agreements." *Concepcion*, 563 U.S. at 342.

No. 15-cv-02139-JST, --- F. Supp. 3d ----, 2015 WL 7015396, at *6 (N.D. Cal. Nov. 12, 2015)).

The District Court's conclusion finds no support in *Brennan*, which expressly *disclaimed* any kind of "require[ment] that the contracting parties be sophisticated … before a court may conclude that incorporation of [arbitration] rules constitutes 'clear and unmistakable' evidence of the parties' intent." 796 F.3d at 1130. And it conflicts with "the vast majority of [other] circuits that hold that incorporation of [arbitration] rules constitutes clear and unmistakable evidence of the parties' intent do so" *regardless* of whether "sophisticated parties" were involved. *Id.* at 1130–31.

This Court should reverse and hold, as the "vast majority of [other] circuits" have, that the parties' incorporation of arbitration rules in their arbitration agreement—here, JAMS rules—clearly and unmistakably evinces their intent to delegate arbitrability questions to the arbitrator in the first instance.[5]

---

[5] Whether Aviles is actually an "unsophisticated" businessman is unclear in any event. In determining Aviles and the putative class members are independent contractors, the District Court found, among other things, that they "enjoy unconstrained autonomy and exercise independent judgment in how they conduct their business"; "have the ability to negotiate favorable rates for challenging loads that other drivers do not want to handle"; "exercise discretion over whether they use their own trucks, lease their trucks from [Quik Pick], or lease their trucks from another source"; "determine whether they will use the insurance policy maintained by [Quik Pick] or select their own coverage"; and

*(Cont'd on next page)*

23

## CONCLUSION

For the foregoing reasons, the District Court's order denying Quik Pick's motion to compel arbitration should be reversed. The Court should remand with instructions to sever the PAGA waiver and enforce the remainder of the parties' arbitration agreement with respect to Aviles's non-PAGA claims. In the alternative, the Court should remand with instructions that the District Court should dismiss (or stay) Aviles's first amended complaint pending the arbitrator's determination regarding the arbitrability of Aviles's claims.

Dated: June 30, 2016                    Respectfully submitted,


                                        /s/ Jesse A. Cripps
                                        Jesse A. Cripps
                                        GIBSON, DUNN & CRUTCHER LLP

                                        *Attorneys for Defendant-Appellant*
                                        *QUIK PICK EXPRESS, LLC*

---

*(Cont'd from previous page)*

"exercise discretion over hiring any employees or other agents to perform their work." (ER9.)

## STATEMENT OF RELATED CASES

Pursuant to Fed. R. App. P. 28-2.6, Quik Pick does not know of any related case pending in this Court.


Dated: June 30, 2016                          /s/ Jesse A. Cripps
                                              Jesse A. Cripps

## CERTIFICATE OF COMPLIANCE

1.    This brief complies with the page limitation of Fed. R. App. P. 32(a)(7)(A), because this brief contains 24 pages.

2.    This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B), because this brief contains 5,329 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

3.    This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6), because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in Times New Roman 14-point font.

Dated: June 30, 2016              /s/ Jesse A. Cripps
                                                  Jesse A. Cripps

102136071.8.DOC

26

| 9th Circuit Case Number(s) | 15-56951 |
|---|---|

**NOTE:** To secure your input, you should print the filled-in form to PDF (File > Print > *PDF Printer/Creator*).

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## CERTIFICATE OF SERVICE
### When All Case Participants are Registered for the Appellate CM/ECF System

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on (date) June 30, 2016 .

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Signature (use "s/" format)   s/ Jesse A. Cripps

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## CERTIFICATE OF SERVICE
### When <u>Not</u> All Case Participants are Registered for the Appellate CM/ECF System

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on (date) .

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

I further certify that some of the participants in the case are not registered CM/ECF users. I have mailed the foregoing document by First-Class Mail, postage prepaid, or have dispatched it to a third party commercial carrier for delivery within 3 calendar days to the following non-CM/ECF participants:

Signature (use "s/" format)

# ADDENDUM

**TABLE OF CONTENTS**

| Statute / Rule | Addendum Page |
|---|---|
| 9 U.S.C. § 4 | Add. 1 |
| 9 U.S.C. § 16 | Add. 2 |
| 28 U.S.C. § 1332(d)(2) | Add. 3 |
| Cal. Civ. Code § 1599 | Add. 3 |
| Cal. Civ. Code § 1638 | Add. 3 |
| Cal. Civ. Code § 1641 | Add. 3 |
| Cal. Civ. Code § 1643 | Add. 4 |
| Cal. Civ. Code § 1670.5 | Add. 4 |
| Cal. Civ. Code § 3541 | Add. 4 |
| Cal. Code Civ. Proc. § 1858 | Add. 4 |
| Fed. R. App. P. 4(a)(1)(A) | Add. 5 |

# UNITED STATES CODE

9 U.S.C. § 4:

A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement. Five days' notice in writing of such application shall be served upon the party in default. Service thereof shall be made in the manner provided by the Federal Rules of Civil Procedure. The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement. The hearing and proceedings, under such agreement, shall be within the district in which the petition for an order directing such arbitration is filed. If the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof. If no jury trial be demanded by the party alleged to be in default, or if the matter in dispute is within admiralty jurisdiction, the court shall hear and determine such issue. Where such an issue is raised, the party alleged to be in default may, except in cases of admiralty, on or before the return day of the notice of application, demand a jury trial of such issue, and upon such demand the court shall make an order referring the issue or issues to a jury in the manner provided by the Federal Rules of Civil Procedure, or may specially call a jury for that purpose. If the jury find that no agreement in writing for arbitration was made or that there is no default in proceeding thereunder, the proceeding shall be dismissed. If the jury find that an agreement for arbitration was made in writing and that there is a default in proceeding thereunder, the court shall make an order summarily directing the parties to proceed with the arbitration in accordance with the terms thereof.

9 U.S.C. § 16:

(a) An appeal may be taken from—

(1) an order—

(A) refusing a stay of any action under section 3 of this title,

(B) denying a petition under section 4 of this title to order arbitration to proceed,

(C) denying an application under section 206 of this title to compel arbitration,

(D) confirming or denying confirmation of an award or partial award, or

(E) modifying, correcting, or vacating an award;

(2) an interlocutory order granting, continuing, or modifying an injunction against an arbitration that is subject to this title; or

(3) a final decision with respect to an arbitration that is subject to this title.

(b) Except as otherwise provided in section 1292(b) of title 28, an appeal may not be taken from an interlocutory order—

(1) granting a stay of any action under section 3 of this title;

(2) directing arbitration to proceed under section 4 of this title;

(3) compelling arbitration under section 206 of this title; or

(4) refusing to enjoin an arbitration that is subject to this title.

28 U.S.C. § 1332(d)(2):

> (2) The district courts shall have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which—
>
> > (A) any member of a class of plaintiffs is a citizen of a State different from any defendant;
> >
> > (B) any member of a class of plaintiffs is a foreign state or a citizen or subject of a foreign state and any defendant is a citizen of a State; or
> >
> > (C) any member of a class of plaintiffs is a citizen of a State and any defendant is a foreign state or a citizen or subject of a foreign state.

## CALIFORNIA CIVIL CODE

Cal. Civ. Code § 1599:

> Where a contract has several distinct objects, of which one at least is lawful, and one at least is unlawful, in whole or in part, the contract is void as to the latter and valid as to the rest.

Cal. Civ. Code § 1638:

> The language of a contract is to govern its interpretation, if the language is clear and explicit, and does not involve an absurdity.

Cal. Civ. Code § 1641:

> The whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other.

Cal. Civ. Code § 1643:

> A contract must receive such an interpretation as will make it lawful, operative, definite, reasonable, and capable of being carried into effect, if it can be done without violating the intention of the parties.

Cal. Civ. Code § 1670.5:

> (a) If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result.

> (b) When it is claimed or appears to the court that the contract or any clause thereof may be unconscionable the parties shall be afforded a reasonable opportunity to present evidence as to its commercial setting, purpose, and effect to aid the court in making the determination.

Cal. Civ. Code § 3541:

> An interpretation which gives effect is preferred to one which makes void.

## CALIFORNIA CODE OF CIVIL PROCEDURE

Cal. Code Civ. Proc. § 1858:

> In the construction of a statute or instrument, the office of the Judge is simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted, or to omit what has been inserted; and where there are several provisions or particulars, such a construction is, if possible, to be adopted as will give effect to all.

**FEDERAL RULES OF APPELLATE PROCEDURE**

Fed. R. App. P. 4(a)(1)(A):

    (a) Appeal in a Civil Case.

        (1) Time for Filing a Notice of Appeal.

            (A) In a civil case, except as provided in Rules 4(a)(1)(B), 4(a)(4), and 4(c), the notice of appeal required by Rule 3 must be filed with the district clerk within 30 days after entry of the judgment or order appealed from.