No. 15-56951

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

Roberto Aviles,

*Plaintiff-Appellee,*

v.

Quik Pick Express, LLC,

*Defendant-Appellant.*

On Appeal from the
United States District Court for the Central District of California

Case No. 2:15-cv-05214-MWF-AGR

The Honorable Michael W. Fitzgerald

## APPELLANT'S REPLY BRIEF

JESSE A. CRIPPS
ANDREW G. PAPPAS
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone: 213.229.7000
Facsimile: 213.229.7520

*Attorneys for Defendant-Appellant Quik Pick Express, LLC*

## TABLE OF CONTENTS

Page

INTRODUCTION ................................................................................1

ARGUMENT ......................................................................................3

    I.    The District Court's Order Denying Quik Pick's Motion to
        Compel Arbitration Should Be Reviewed *De Novo*. ...........................3

    II.   The Arbitration Provision Expressly Requires Unenforceable
        Terms to Be Severed and the Remaining Terms Enforced....................5

    III.  The Arbitration Provision Clearly and Unmistakably Delegates
        Arbitrability Questions to the Arbitrator.............................................13

CONCLUSION .................................................................................19

CERTIFICATE OF COMPLIANCE .....................................................21

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Ajamian v. CantorCO2e, L.P.*,
  203 Cal. App. 4th 771 (2012) ...........................................................................17

*Awuah v. Coverall North America, Inc.*,
  554 F.3d 7 (1st Cir. 2009) ................................................................................15

*Brennan v. Opus Bank*,
  796 F.3d 1125 (9th Cir. 2015) ...............................................13, 14, 15, 17, 19

*Buckeye Check Cashing, Inc. v. Cardegna*,
  546 U.S. 440 (2006) .........................................................................................18

*Chalk v. T-Mobile USA, Inc.*,
  560 F.3d 1087 (9th Cir. 2009) ....................................................................10, 11

*Dotson v. Amgem, Inc.*,
  181 Cal. App. 4th 975 (2010) ...........................................................................12

*Fallo v. High-Tech Institute*,
  559 F.3d 874 (8th Cir. 2009) ............................................................................15

*Interdigital Tech. Corp. v. Pegatron Corp.*,
  No. 15-CV-02584, 2016 WL 234433 (N.D. Cal. Jan. 20, 2016) ......................16

*Kramer v. Toyota Motor Corp.*,
  705 F.3d 1122 (9th Cir. 2013) ............................................................................4

*Lee v. Intelius Inc.*,
  737 F.3d 1254 (9th Cir. 2013) ............................................................................4

*Lou v. Ma Labs., Inc.*,
  No. 12-cv-5409 WHA, 2013 WL 2156316
  (N.D. Cal. May 17, 2013) .................................................................................16

*Malone v. Superior Court*,
  226 Cal. App. 4th 1551 (2014) .........................................................................17

## TABLE OF AUTHORITIES
*(continued)*

Page(s)

*Meadows v. Dickey's Barbecue Rests. Inc.*,
   144 F. Supp. 3d 1069 (N.D. Cal. 2015)............................................................16

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
   473 U.S. 614 (1985).........................................................................................19

*Mohamed v. Uber Techs., Inc.*,
   --- F.3d ----, No. 15-16178, 2016 WL 4651409
   (9th Cir. Sep. 7, 2016).................................................................3, 8, 9, 10, 19

*Montano v. The Wet Seal Retail, Inc.*,
   232 Cal. App. 4th 1214 (2015) .........................................................................11

*Moody v. Metal Supermarket Franchising Am., Inc.*,
   No. 13-cv-5098-PJH, 2014 WL 988811 (N.D. Cal. Mar. 10, 2014).................16

*Oracle Am., Inc. v. Myriad Grp. A.G.*,
   724 F.3d 1069 (9th Cir. 2013) .......................................................3, 13, 14, 15

*Perry v. Thomas*,
   482 U.S. 483 (1987).........................................................................................18

*Pokorny v. Quixtar, Inc.*,
   601 F.3d 987 (9th Cir. 2010) .............................................................................4

*Rent-A-Center, W., Inc. v. Jackson*,
   561 U.S. 63 (2010).....................................................................................18, 19

*Roman v. Superior Ct.*,
   172 Cal. App. 4th 1462 (2009) .....................................................................5, 12

*Sakkab v. Luxottica Retail North America, Inc.*,
   803 F.3d 425 (9th Cir. 2015) .........................................................................1, 7

*Securitas Security Services USA, Inc. v. Superior Court*,
   234 Cal. App. 4th 1109 (2015) .........................................................................11

## TABLE OF AUTHORITIES
*(continued)*

Page(s)

*Sierra v. Oakley Sales Corp.*,
637 F. App'x 368 (9th Cir. 2016) ....................................................7, 8

*Tompkins v. 23andMe, Inc.*,
--- F.3d ----, No. 14-16405, 2016 WL 4437615 .......................................4, 5, 18

*Tompkins v. 23andMe, Inc.*,
No. 5:13-CV-05682-LHK, 2014 WL 2903752
(N.D. Cal. June 25, 2014) .....................................................16

*Volt Info. Scis., Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.*,
489 U.S. 468 (1989).........................................................18

*Zenelaj v. Handybook Inc.*,
82 F. Supp. 3d 968 (N.D. Cal. 2015)...................................................16

# INTRODUCTION

Aviles's answering brief only confirms that the District Court's order denying Quik Pick's motion to compel arbitration should be reversed.[1]

The District Court refused to enforce the parties' arbitration agreement after concluding that (1) the court, not the arbitrator, should decide arbitrability issues, (2) the arbitration provision's representative-action waiver was unconscionable in light of *Sakkab v. Luxottica Retail North America, Inc.*, 803 F.3d 425 (9th Cir. 2015), and (3) the representative action waiver could not be severed from, and therefore required the invalidation of, the arbitration provision as a whole.

As Quik Pick explained in its opening brief, this was error. Quik Pick continues to dispute that the arbitration provision is even minimally unconscionable. Even assuming it is, however, the arbitration provision explicitly requires "any … unenforceable" terms to "be severed and the remaining terms enforced." (ER31.) As a result, Quik Pick explained, even if the representative action waiver could not be enforced regarding the claims Aviles purports to bring

---

[1] As in the opening brief, Defendant-Appellant Quik Pick Express, LLC is referred to as "Quik Pick," and Plaintiff-Appellee Roberto Aviles is referred to as "Aviles." Aviles's answering brief is cited as "Ans. Br."; Quik Pick's appellant's opening brief is cited as "AOB"; and the excerpts of record are cited as "ER."

1

under California's Private Attorney General Act of 2004 ("PAGA"), the arbitration provision should at least be enforced as to Aviles's various non-PAGA claims.

As Quik Pick also explained, the District Court never should have reached the question whether the PAGA waiver is severable or enforceable in any event, because the parties' arbitration agreement clearly and unmistakably delegates arbitrability issues to the arbitrator. It does so by incorporating JAMS's arbitration rules, which undisputedly commit arbitrability questions to the arbitrator.

Aviles has no real response. He repeatedly claims the parties' agreement "itself provides that the PAGA waiver is not severable from the rest of the arbitration provision," as if mere incantation could make that true. Ans. Br. at 14; *see also id.* at 4, 15, 16, 17. It cannot. Not only does the arbitration provision allow severance of the PAGA waiver, it *requires* it if that waiver is "found to be unenforceable" (ER31), as the District Court found it was here. Nothing in the severance clause (or anywhere else) "limits [its] scope" or somehow "exempts" PAGA claims from its reach, as Aviles wrongly contends. Ans. Br. at 2, 17.

Aviles also cannot seriously dispute that this Court's decisions, the prevailing weight of authority among California district courts, and the decisions of most other federal courts of appeals support the conclusion that the parties' incorporation of JAMS's arbitration rules evinces their clear and unmistakable intent to delegate arbitrability questions to the arbitrator in the first instance.

2

Instead, he cites a handful of contrary district court decisions and, contrary to its actual language, contends the parties' arbitration agreement does not contain a delegation provision at all.

The District Court's order should be reversed with directions (1) to sever the PAGA waiver and enforce the balance of the parties' arbitration agreement, or, in the alternative, (2) to dismiss the action as a whole pending the arbitrator's arbitrability determination.

## ARGUMENT

### I.   The District Court's Order Denying Quik Pick's Motion to Compel Arbitration Should Be Reviewed *De Novo*.

The District Court's decision denying Quik Pick's motion to compel arbitration should be reviewed *de novo*. Aviles disagrees, claiming Quik Pick "misstate[d] the standard of review applicable here, relying on outdated case law." Ans. Br. at 4. Aviles is mistaken.

Just last week—in a case holding that a PAGA waiver was severable from the parties' arbitration agreement and that the parties had clearly and unmistakably delegated arbitrability questions to the arbitrator—the Court reaffirmed that it "review[s] de novo an order denying a motion to compel arbitration." *Mohamed v. Uber Techs., Inc.*, --- F.3d ----, No. 15-16178, 2016 WL 4651409, at *3 (9th Cir. Sep. 7, 2016) (citing *Oracle Am., Inc. v. Myriad Grp. A.G.*, 724 F.3d 1069, 1072

3

(9th Cir. 2013)). And last month, the Court noted that it "'review[s] *de novo* district court decisions about the arbitrability of claims,'" "and [also] review[s] '[t]he interpretation and meaning of contract provisions' de novo." *Tompkins v. 23andMe, Inc.*, --- F.3d ----, No. 14-16405, 2016 WL 4437615, at *3 (quoting *Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1126 (9th Cir. 2013); *Lee v. Intelius Inc.*, 737 F.3d 1254, 1258 (9th Cir. 2013)). That is true even though a court's decision whether to "sever an unconscionable provision from an agreement" is generally reviewed for an abuse of discretion under California law (*Pokorny v. Quixtar, Inc.*, 601 F.3d 987, 1005 (9th Cir. 2010)), as Quik Pick noted in its opening brief (AOB at 9).[2]

The Court should therefore decline Aviles's invitation to "apply an abuse of discretion standard" here. Ans. Br. at 5. The question is not whether the District Court abused its discretion by refusing to sever the PAGA waiver in the arbitration provision or enforce the parties' agreement to arbitrate questions of arbitrability— the District Court did not even purport to exercise its discretion in deciding those issues, instead interpreting the contract language itself and concluding, based on that interpretation, that "the unconscionable PAGA waiver … cannot be severed *according to the express terms of the subhaul agreement*," and deciding as a matter

---

[2] Whether the arbitration agreement at issue in *Pokorny* included a severance clause is not apparent from the Court's opinion in that case.

of law that a supposedly unsophisticated party like Aviles cannot "evince[] a clear and unmistakable intent to delegate" by incorporating arbitration rules. (ER16, 12 (emphasis added).) Rather, the question is whether the language of the arbitration agreement itself requires, as a matter of contract interpretation, the PAGA waiver to be severed, and whether the parties agreed to arbitrate arbitrability issues by incorporating JAMS's rules. Consistent with this Court's longstanding case law, these questions about "'[t]he interpretation and meaning of contract provisions'" and "'the arbitrability of claims'" are reviewed *de novo*. *Tompkins*, 2016 WL 4437615, at *3.

## II. The Arbitration Provision Expressly Requires Unenforceable Terms to Be Severed and the Remaining Terms Enforced.

The arbitration provision's severance clause expressly requires any unenforceable terms to be severed and the remaining terms enforced. (ER31.) As Quik Pick explained, the District Court's contrary decision violates the provision's clear terms and California's "strong legislative and judicial preference ... to sever [an] offending term and enforce the balance of [an arbitration] agreement." *Roman v. Superior Ct.*, 172 Cal. App. 4th 1462, 1477 (2009).

1. The severance clause provides, in full:

If any provision in this Section is found to be unenforceable, that term shall be severed and the remaining terms enforced. Under no circumstances, however, shall any class, collective, representative, consolidated, and multiple claimant action be permitted to proceed in any arbitration proceeding.

(ER31.) The meaning of this clause is clear and unambiguous: If the arbitration provision's PAGA waiver is "unenforceable," as the District Court "found," then it "shall be severed and the remaining terms [of the arbitration provision] enforced." (*Id.*) And the practical result is equally clear: Even if the PAGA waiver is unenforceable as to the claims Aviles calls his PAGA causes of action (ER41–49 ¶¶ 23–56, ER51 ¶¶ 65–68), (1) the arbitration should at least be enforced as to his *non*-PAGA causes of action (ER49–51 ¶¶ 57–64, ER52–57 ¶¶ 69–93), (2) those claims should proceed in bilateral arbitration, and (3) Aviles's PAGA claims should be adjudicated in court.

Aviles insists otherwise. He variously contends that "the express terms of the *severance agreement* [sic] provide that [the PAGA] waiver cannot be severed from the contract," and that "the *PAGA waiver* expressly forbids severance." Ans. Br. at 4, 15 (emphases added). Aviles is wrong on both counts.

2. Aviles argues the severance clause makes the PAGA waiver non-severable because the "word 'however'" in its second sentence "limits it to claims other than representative actions," and thus "exempts a 'representative' action like PAGA" from its scope. Ans. Br. at 17. It does no such thing.

The severance clause does not "exempt[]" any "claims" from its reach, and it neither says nor implies that the PAGA waiver cannot be severed from the arbitration provision. *Id.* On the contrary, by its plain terms, the severance clause

provides that "*any*" "unenforceable … term shall be severed and the remaining terms [of the arbitration provision] enforced." (ER31 (emphasis added).) The PAGA waiver necessarily falls within this broad, inclusive language.

And nothing in the severance clause's second sentence suggests otherwise. That sentence—"Under no circumstances, however, shall any class, collective, representative, consolidated, and multiple claimant action be permitted to proceed in any arbitration proceeding" (ER31)—does not "limit[]" the severance clause's scope, as Aviles contends. Ans. Br. at 17. Instead, it merely clarifies *where* a "representative … action" may "proceed," specifying that such a claim may *not* be adjudicated in arbitration. (ER31.)

The severance clause in this case is thus practically indistinguishable from the one the Court enforced in *Sierra v. Oakley Sales Corp.*, 637 F. App'x 368 (9th Cir. 2016). There, as here, an arbitration agreement waived representative claims, and its severance clause provided that (1) any unenforceable provisions must be severed, and (2) a representative claim could not proceed in arbitration. *Id.* at 369. The Court concluded the "offending clause waiving representative claims [was] severable from the rest of [the arbitration agreement]," and remanded the case to the District Court "to decide where Sierra's representative PAGA claims should be resolved," in court or in arbitration. *Id.* (citing *Sakkab*, 803 F.3d at 440).

Aviles labors in vain to distinguish *Sierra*, arguing that "the severance clause [there] had its own embedded severance clause" (whatever that means), and that "the contract in *Sierra* adds that the non-severability of class claims does not affect the remainder of the contract," whereas "[i]n this case there is no such term." Ans. Br. at 17–18.  Aviles misreads *Sierra*—the Court there concluded the representative-action waiver *was* severable, not that "class claims" were "non-severab[le]." *Sierra*, 637 F. App'x at 369.  And the distinction he tries to draw is unavailing anyhow:  The severance clause here provides that "[i]f any provision in [the arbitration provision] is found to be unenforceable, that term shall be severed *and the remaining terms enforced*" (ER31 (emphasis added))—in other words, that severing the PAGA waiver (or any other term) "does not affect the remainder of the contract" (Ans. Br. at 18).

In any event, the Court's decision last week in *Mohamed* further confirms that the PAGA waiver should be severed from the arbitration provision here.  In *Mohamed*, the parties' agreement provided in one section that "'[i]f any provision of the Agreement is held to be invalid or unenforceable, such provision shall be struck and the remaining provisions shall be enforced to the fullest extent under law.'"  2016 WL 4651409, at *8.  In a second section, the agreement provided:

> There will be no right or authority for any dispute to be brought, heard, or arbitrated as a private attorney general representative action ("Private Attorney General Waiver").  The Private Attorney General Waiver shall not be severable from this Arbitration Provision in any

8

case in which a civil court of competent jurisdiction finds the Private Attorney General Waiver is unenforceable. In such instances and where the claim is brought as a private attorney general, such private attorney general claim must be litigated in a civil court of competent jurisdiction.

*Id.* And in a third section, the agreement provided that, except as provided above, "'in the event any portion of this Arbitration Provision is deemed unenforceable, the remainder of this Arbitration Provision will be enforceable.'" *Id.*

"Reading these ambiguous provisions together," the Court concluded "[t]he PAGA waiver [was] severable from the remainder of the arbitration provision." *Id*. The Court explained "that in stating that the PAGA waiver and the arbitration provision are not severable, the contract provides that, if the PAGA waiver turned out to be invalid, the arbitration provision would also be invalid as to any PAGA representative claim." *Id*. "Thus," the Court continued, "while Plaintiffs' PAGA claim must be litigated in court, the PAGA waiver does not invalidate the remainder of the arbitration provision in the … Agreement, and it should be enforced according to its terms." *Id.*

The rationale for enforcing the severance clause is even stronger in this case. The severance clause here is not "ambiguous" at all (*id.*)—it never suggests in any way that the PAGA waiver may not be severed from the arbitration provision. (ER31.) Although the severance clause here does not explicitly provide that a PAGA claim "must be litigated in a civil court of competent jurisdiction"

(*Mohamed*, 2016 WL 4651409, at *8), that is the unavoidable implication of its clarification that no "representative … action [shall] be permitted to proceed in any arbitration proceeding" (ER31). And here, as in *Mohamed*, the PAGA waiver should be severed, and "the remainder of the arbitration provision … should be enforced according to its terms." *Mohamed*, 2016 WL 4651409, at *8.

3. Aviles also copies and pastes (without quotation marks) the District Court's conclusion that "[t]he plain language of the contract requires invalidation of the entire arbitration provision because the *PAGA waiver* expressly forbids severance." Ans. Br. at 15 (emphasis added); *see* ER16. But Aviles does not even try to show that is true—nor can he.

As Quik Pick explained, the PAGA waiver says *nothing* about severance, "expressly" or otherwise. AOB at 14. Pursuant to that waiver, the parties "agreed that any and all arbitration proceedings will be initiated and maintained only as matters involving a single claimant or plaintiff," and "that no … representative … actions will be permitted"; and "[t]he parties voluntarily and fully waive[d] and [gave] up any and all rights to bring any … representative action[s] against each other or others." (ER30–31.) But the PAGA waiver in no way "expressly forbids severance," and Aviles does not even attempt to show otherwise. Ans. Br. at 15.

Aviles nonetheless contends that "this case is precisely like" *Chalk v. T-Mobile USA, Inc.*, 560 F.3d 1087 (9th Cir. 2009), in which the parties' agreement

10

provided that "'IF A COURT OR ARBITRATOR DETERMINES THAT YOUR WAIVER OF YOUR ABILITY TO PURSUE CLASS OR REPRESENTATIVE CLAIMS IS UNENFORCEABLE, *THE ARBITRATION AGREEMENT WILL NOT APPLY* AND OUR DISPUTE WILL BE RESOLVED BY A COURT OF APPROPRIATE JURISDICTION.'" Ans. Br. at 15–16 (quoting *Chalk*, 560 F.3d at 1091 (emphasis added)). It is not. Unlike in *Chalk*—and unlike in *Securitas Security Services USA, Inc. v. Superior Court*, 234 Cal. App. 4th 1109, 1114 (2015), or *Montano v. The Wet Seal Retail, Inc.*, 232 Cal. App. 4th 1214, 1219 (2015), the other cases Aviles cites (Ans. Br. at 16)—the PAGA waiver here nowhere says or even suggests it cannot be severed from the rest of the class waiver or the arbitration provision as a whole. Quite the opposite: As explained above, the arbitration provision's severance clause *requires* the PAGA waiver to be severed from the arbitration provision if it is "found to be unenforceable," and the "remaining terms [of the arbitration provision] enforced." (ER31.)

4. Finally, Aviles spends six pages of his brief arguing that "even if the representative action waiver could be severed, the District Court properly exercised its discretion not to sever it," because the arbitration provision is unconscionable. Ans. Br. at 18–24. Aviles misses the point. The District Court did not "exercise[] its discretion not to sever" the PAGA wavier from the arbitration provision "because the contract was pervaded by unconscionability." Ans. Br. at 18–19.

11

The court erroneously concluded the "arbitration provision is unconscionable" because "the PAGA waiver … is contrary to public policy and thus unconscionable," and then determined that "the unconscionable PAGA waiver … cannot be severed *according to the express terms of the subhaul agreement*." (ER15–16 (emphasis added).)

Quik Pick continues to dispute that the PAGA waiver was unconscionable or unenforceable. But even assuming it was, the "express terms of the subhaul agreement" require that if "*any* provision"—including the PAGA waiver—"is found to be unenforceable, that term shall be severed and the remaining terms [of the arbitration provision] enforced." (ER16, 31.)

The Court should reverse the District Court's decision with directions to sever the PAGA waiver and enforce the remainder of the parties' arbitration agreement according to its unambiguous terms (ER30–31), and consistent with California's "strong legislative and judicial preference … to sever [an] offending term and enforce the balance of [an arbitration] agreement." *Roman*, 172 Cal. App. 4th at 1477; *see also Dotson v. Amgem, Inc.*, 181 Cal. App. 4th 975, 985 (2010) ("Where … only one provision of the agreement is found to be unconscionable and that provision can easily be severed without affecting the remainder of the agreement, the proper course is to do so.").

### III. The Arbitration Provision Clearly and Unmistakably Delegates Arbitrability Questions to the Arbitrator.

Because the arbitration provision clearly and unmistakably delegates questions of arbitrability to the arbitrator, the District Court never should have reached the question whether the PAGA waiver was enforceable in the first place.

As Quik Pick explained (AOB at 21), the arbitration provision's delegation clause provides:

> [A]ny controversy arising out of or related to this Agreement … or related to the transportation of cargo and merchandise (including without limitation an allegation that this Agreement is void from the outset or that the Contractor's relationship to [the] Company is something other than that of independent contractor), *shall be submitted to JAMS for final and binding arbitration in accordance with its comprehensive rules and procedures* that are in effect at the time the arbitration is filed.

(ER30 (emphasis added).) JAMS's Comprehensive Arbitration Rules and Procedures clearly commit arbitrability questions to the arbitrator. (AOB at 21; ER109; *see also* ER4.) And the parties' incorporation of the JAMS rules into the arbitration provision clearly and unmistakably evinces the parties' intent to delegate arbitrability issues to the arbitrator. *See Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015); *Oracle Am.*, 724 F.3d at 1069.

Aviles contends otherwise, arguing that "there is simply no delegation clause in the contract at issue," and then "urg[ing] this Court to resolve the split of authority and rule that a delegation clause must actually be in a contract to

evidence 'clear and unmistakable' [sic]" or "to find that the delegation clause must be explicit where one or more unsophisticated parties is involved." Ans. Br. at 7, 9. Aviles misconstrues both the arbitration provision and this Court's case law.

As set forth above, the arbitration provision *does* include a delegation clause—it expressly incorporates JAMS's comprehensive rules, which expressly commit arbitrability questions to the arbitrator. (ER30, 109.) And under the Court's precedents, this should be sufficient to conclude the parties clearly and unmistakably delegated arbitrability issues to the arbitrator.

In *Brennan*, this Court held that a contract's "incorporation of the [American Arbitration Association's] rules," which similarly assign arbitrability questions to the arbitrator, "constitutes clear and unmistakable evidence that contracting parties agreed to arbitrate arbitrability." 796 F.3d at 1130. And in *Oracle America*, this Court held "that incorporation of the UNCITRAL rules—which contain a jurisdictional provision 'almost identical' to the one in the AAA rules—constituted 'clear and unmistakable evidence that the parties agreed the arbitrator would decide arbitrability." *Id.* (quoting *Oracle Am.*, 724 F.3d at 1074–75).

Both decisions limited their holdings to their facts, and both "involve[d] … arbitration agreement[s] 'between sophisticated parties.'" *Brennan*, 796 F.3d at 1131 (quoting *Oracle Am.*, 724 F.3d at 1075 & n.2). But the Court in *Brennan* emphasized that its holding "should not be interpreted to *require* that the

contracting parties be sophisticated or that the contract be 'commercial' before a contract may conclude that incorporation of the AAA rules constitutes 'clear and unmistakable' evidence of the parties' intent." *Id.* at 1130 (emphasis added). And the Court expressly left open "the possibility that this rule could also apply to unsophisticated parties[.]" *Id.*

Indeed, "'[v]irtually every circuit to have considered the issue has determined that incorporation of the [AAA] arbitration rules constitutes clear and unmistakable evidence that the parties agreed to arbitrate arbitrability.'" *Id.* at 1130 (quoting *Oracle Am.*, 724 F.3d at 1074). "[T]he vast majority of the circuits that hold that incorporation of the AAA rules constitutes clear and unmistakable evidence of the parties' intent to do so *without* explicitly limiting that holding to sophisticated parties or to commercial contracts." *Id.* at 1130–31 (collecting cases) (emphasis added). In fact, two of the cases the Court cited in *Brennan*—the Eighth Circuit's decision in *Fallo v. High-Tech Institute*, 559 F.3d 874, 878 (8th Cir. 2009), and the First Circuit's decision in *Awuah v. Coverall North America, Inc.*, 554 F.3d 7, 10–12 (1st Cir. 2009)—involved *unsophisticated* parties but nevertheless concluded that incorporation of arbitration rules clearly and unmistakably evinced the parties' intent to delegate arbitrability questions to the arbitrator. And "the great weight of prevailing case law" among California district courts similarly holds that "unsophisticated parties can clearly and unmistakably

delegate arbitrability" in arbitration agreements. *Zenelaj v. Handybook Inc.*, 82 F. Supp. 3d 968, 973 (N.D. Cal. 2015) (collecting cases).

Aviles fails to grapple with *any* of these decisions. Instead, he repeats verbatim the District Court's conclusions about Aviles's supposed lack of sophistication and cites a handful of district court decisions (also cited by the District Court) holding that unsophisticated parties may *not* delegate arbitrability by incorporating arbitration rules. *See* Ans. Br. at 7–8, 11–13 (citing *Meadows v. Dickey's Barbecue Rests. Inc.*, 144 F. Supp. 3d 1069, 1076 (N.D. Cal. 2015); *Tompkins v. 23andMe, Inc.*, No. 5:13-CV-05682-LHK, 2014 WL 2903752, at *11 (N.D. Cal. June 25, 2014); *Lou v. Ma Labs., Inc.*, No. 12-cv-5409 WHA, 2013 WL 2156316, at *3 (N.D. Cal. May 17, 2013)). Aviles also relies heavily on the district court's decision in *Moody v. Metal Supermarket Franchising Am., Inc.*, No. 13-cv-5098-PJH, 2014 WL 988811 (N.D. Cal. Mar. 10, 2014), to argue that an arbitration agreement must *quote* the relevant arbitration rules it incorporates in order to delegate arbitrability questions to the arbitrator. Ans. Br. at 12–13.

But *Moody* conflicts with *Brennan*. *Interdigital Tech. Corp. v. Pegatron Corp.*, No. 15-CV-02584, 2016 WL 234433, at *6 (N.D. Cal. Jan. 20, 2016) ("Contrary to [*Moody*], under the binding Ninth Circuit precedent of *Brennan*, incorporation of the AAA rules is clear and unmistakable evidence of the parties' intent to delegate arbitrability to an arbitrator.").

16

Aviles points (Ans. Br. at 12) to dicta in a California Court of Appeal decision "question[ing] how [incorporation of AAA rules into an arbitration agreement] provides *clear* and *unmistakable* evidence that an employer and an employee intended to submit the issue of unconscionability of the arbitration provision to the arbitrator." *Ajamian v. CantorCO2e, L.P.*, 203 Cal. App. 4th 771, 790 (2012). But the court there "need[ed] not decide" that question. *Id.* at 791. More recently, a different Court of Appeal concluded an arbitration agreement "incorporated" a "second delegation clause … by reference to the applicable AAA rules." *Malone v. Superior Court*, 226 Cal. App. 4th 1551, 1557 n.3 (2014).

And Aviles simply ignores "the vast majority of [federal] circuits that hold that incorporation of [arbitration] rules constitutes clear and unmistakable evidence of the parties' intent[] to" delegate arbitrability issues to the arbitrator, whether or not "sophisticated parties" were involved. *Brennan*, 796 F.4d at 1130–31.

That other courts have reached this conclusion makes perfect sense. Aviles *concedes* the "basic principle" that California law allows contracting parties to incorporate terms by reference *regardless* of whether they are sophisticated. Ans. Br. at 10. But he offers no persuasive reason why that fundamental tenet of California contract law should apply to contracts generally but not in the arbitration context. There is none. "'[I]n assessing the rights of litigants to enforce an arbitration agreement' a court may not 'construe that agreement in a manner

17

different from that in which it otherwise construes nonarbitration agreements under state law.'" *Tompkins*, 2016 WL 4437615, at *3 (quoting *Perry v. Thomas*, 482 U.S. 483, 492 n.9 (1987)). And to create a special incorporation-by-reference rule for arbitration agreements would run afoul of section 2 of the FAA, which requires that arbitration agreements be placed "on an equal footing with other contracts, … and requires courts to enforce [arbitration agreements] according to their terms." *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 67 (2010) (citing *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006); *Volt Info. Scis., Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 478 (1989)).

Aviles has no real answer. Instead, he argues that *Rent-A-Center* is somehow "distinguishable from the instant case" because "several arbitration agreements were at issue" there. Ans. Br. at 10. But Aviles is wrong again. The Supreme Court's conclusions about what the FAA requires are by no means limited to *Rent-A-Center*'s facts. *Rent-A-Center*, 561 U.S. at 67. In any event, much like in that case, the arbitration provision here *does* contain "multiple 'written provision[s]' to 'settle by arbitration a controversy.'" *Id.* at 68. As the Supreme Court explained in *Rent-A-Center*, "[t]he delegation provision [itself] is an agreement to arbitrate threshold issues concerning the arbitration agreement." *Id.* "An agreement to arbitrate a gateway issue" like this one "is simply an additional, antecedent agreement the party seeking arbitration asks the federal

18

court to enforce, and the FAA operates on this additional arbitration agreement just as it does any other." *Id.*; *see also Brennan*, 796 F.3d at 1132–33.

"In accordance with Supreme Court precedent," the Court "[is] required to enforce … agreements" to arbitrate arbitrability issues "'according to their terms[.]'" *Mohamed*, 2016 WL 4651409, at *5 (quoting *Rent-A-Center*, 561 U.S. at 67). Here, the arbitration provision's plain terms incorporate by reference the JAMS rules, which unambiguously commit arbitrability questions to the arbitrator. The Court should hold, as "the vast majority of [other] circuits" have, and consistent with general principles of contract interpretation, that this is clear and unmistakable evidence that the parties intended to delegate arbitrability questions to the arbitrator, and reverse the District Court's contrary decision. To do otherwise would be to create a special incorporation-by-reference rule for arbitration agreements, which the FAA forbids. *Rent-A-Center*, 561 U.S. at 67.

## CONCLUSION

"[A]s a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration" (*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985)), and the District Court's order denying Quik Pick's motion to compel arbitration should be reversed. The Court should remand with instructions to sever the PAGA waiver and enforce the remainder of the parties' arbitration agreement regarding Aviles's non-PAGA

claims. Alternatively, the Court should remand with instructions that the District Court should dismiss (or stay) Aviles's first amended complaint pending the arbitrator's determination regarding the arbitrability of Aviles's claims.

Dated: September 14, 2016                    Respectfully submitted,


                                            /s/ Jesse A. Cripps
                                            Jesse A. Cripps
                                            GIBSON, DUNN & CRUTCHER LLP

                                            *Attorneys for Defendant-Appellant*
                                            *QUIK PICK EXPRESS, LLC*

## CERTIFICATE OF COMPLIANCE

1.      This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B), because this brief contains 4,486 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

3.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6), because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in Times New Roman 14-point font.


Dated: September 14, 2016           /s/ Jesse A. Cripps
                                    _____
                                    Jesse A. Cripps


102173881.11

21

| 9th Circuit Case Number(s) | 15-56951 |
|---|---|

**NOTE:** To secure your input, you should print the filled-in form to PDF (File > Print > *PDF Printer/Creator*).

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## CERTIFICATE OF SERVICE
### When All Case Participants are Registered for the Appellate CM/ECF System

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on (date) Sep 14, 2016 .

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Signature (use "s/" format) | /s/ Jesse A. Cripps

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## CERTIFICATE OF SERVICE
### When <u>Not</u> All Case Participants are Registered for the Appellate CM/ECF System

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on (date) .

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

I further certify that some of the participants in the case are not registered CM/ECF users. I have mailed the foregoing document by First-Class Mail, postage prepaid, or have dispatched it to a third party commercial carrier for delivery within 3 calendar days to the following non-CM/ECF participants:

Signature (use "s/" format)